IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADRIANNE ROSS<br><br>                        Plaintiff,<br><br>-vs-<br><br>THE CHILDRENS HOSPITAL<br>OF PHILADELPHIA;<br>ALICE MULLINARY *(individually)*;<br>and JENNIFER DEE *(individually)*;<br><br>                        Defendant. | Civil Action No. |

Plaintiff, ADRIANNE ROSS, by and through her attorneys, Freundlich and Littman, LLC, hereby files this civil action complaint against Defendants, THE CHILDRENS HOSPITAL OF PHILADELPHIA, ALICE MULLINARY, and JENNIFER DEE, for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951 et seq. ("PHRA").

## PARTIES

1. Plaintiff, ADRIANNE ROSS (hereinafter referred to as "Plaintiff" or "ROSS"), is an individual African American female who is a resident of the County of Bucks in the Commonwealth of Pennsylvania.

2. At all times material, Plaintiff was employed by Defendants in Philadelphia, Pennsylvania.

3. Defendant, THE CHILDRENS HOSPITAL OF PHILADELPHIA (hereinafter referred to as "Defendant" or "CHOP"), is a domestic nonprofit corporation organized under the laws of the

Commonwealth of Pennsylvania and authorized to conduct business within the Commonwealth of Pennsylvania.

4. At all times material, Defendant CHOP maintained its principal place of business at 3401 Civic Center Boulevard, Philadelphia, Pennsylvania 19104.

5. At all times material, Defendant CHOP employed at least fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.

6. At all times relevant to this Civil Action, Defendant CHOP was Plaintiff's employer and controlled the terms, conditions, and privileges of Plaintiff's employment.

7. Defendant ALICE MULLINARY (hereinafter referred to as "Defendant" or "MULLINARY") was, at all times material, an employee of Defendant CHOP and held the position of Director of Nursing.

8. At all times material, Defendant MULLINARY exercised supervisory authority over Plaintiff and participated in, approved of, or failed to prevent the discriminatory and retaliatory conduct complained of herein.

9. Defendant JENNIFER DEE (hereinafter referred to as "Defendant" or "DEE") was, at all times material, an employee of Defendant CHOP and held the position of Vice Chair of Behavioral Health.

10. At all times material, Defendant DEE was Plaintiff's direct supervisor and exercised authority and control over Plaintiff's job duties, performance evaluation, and continued employment, and she aided, abetted, incited, compelled, or coerced the unlawful discriminatory and retaliatory conduct in violation of the PHRA.

**JURISDICTION AND VENUE**

11. Jurisdiction of this action is conferred upon this Court pursuant to federal question jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981.

12. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper in the Eastern District of Pennsylvania because Plaintiff was employed by Defendants and worked in Philadelphia, Pennsylvania, where the discrimination, harassment, retaliation, hostile work environment, and unlawful termination occurred.

14. On or around February 10, 2025, Plaintiff, Adrianne Ross, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants, as described herein.

15. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCHR").

16. Plaintiff's rights under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance will be ripe for suit one year after the date her Charge of Discrimination was dual filed with the PHRC and the PCHR.

17. Plaintiff includes her PHRA claims in this Civil Action Complaint in the interest of judicial economy, as Plaintiff's state law claims will be ripe during the pendency of this action.

18. On or around September 26, 2025, the EEOC issued and sent Plaintiff a Dismissal and Notice of Rights advising her that she must file a civil action within ninety (90) days of receipt.

19. This action is timely commenced within ninety (90) days of Plaintiff's receipt of the Dismissal and Notice of Rights.

## MATERIAL FACTS

20. On or around December 11, 2023, Plaintiff applied for a physician leadership position with Defendant THE CHILDRENS HOSPITAL OF PHILADELPHIA. Plaintiff is an African American woman.

21. During the interview process, Defendants represented to Plaintiff that she would be responsible for overseeing the operational aspects of the behavioral health inpatient center and the crisis walk in center.

22. During the interview, Plaintiff informed Defendants that she was completing an existing contractual obligation with another organization, which would run concurrently with her employment at CHOP until the contract expired in or around June 2024. Defendants acknowledged and approved this arrangement prior to hiring Plaintiff.

23. On or around April 1, 2024, Plaintiff began her employment with Defendants at CHOP in Philadelphia, Pennsylvania.

24. From the outset of her employment, Plaintiff was subjected to hostility, exclusion, and heightened scrutiny that similarly situated non-African American employees did not experience.

25. Upon Plaintiff's arrival, her direct reports were unaware of her hire or role, and Plaintiff was provided no meaningful orientation, onboarding, or guidance regarding her responsibilities.

26. Defendants failed to clearly communicate Plaintiff's authority and role within the department, leaving Plaintiff isolated in a complex leadership position without institutional support.

27. Despite the lack of onboarding and support, Plaintiff performed her duties at a high level and produced measurable positive outcomes for Defendant CHOP.

28. Plaintiff was assigned responsibility for an initiative aimed at increasing the number of registered and licensed inpatient beds within the department. Through her own efforts, Plaintiff successfully facilitated the licensure of thirty-six (36) inpatient beds in compliance with state and federal requirements.

29. Shortly after beginning her employment, Plaintiff observed that African American employees were treated less favorably than similarly situated employees who were not members of Plaintiff's protected class.

30. Plaintiff experienced resistance and hostility from colleagues and supervisors, creating a work environment that was unwelcoming and discriminatory on the basis of race.

31. Defendant JENNIFER DEE, Plaintiff's direct supervisor, repeatedly questioned Plaintiff's qualifications and undermined her authority despite Plaintiff's experience and accomplishments.

32. Employees outside of Plaintiff's protected class received clearer guidance, greater support, and more favorable treatment than Plaintiff.

33. Plaintiff was excluded from key meetings, denied access to critical resources, and subjected to excessive and unjustified scrutiny regarding her performance.

34. Defendant Dee made multiple hostile and racially charged comments toward Plaintiff, including statements such as "I see you are a strong Black woman," which reflected racial stereotyping rather than professional evaluation.

35. Defendant Dee also stated that Plaintiff's position was an "experiment" and suggested that Plaintiff would be released following the experiment, undermining Plaintiff's job security and authority.

36. Plaintiff was the second African American woman in leadership, after Dr. Maryam Muhammad, to experience discrimination, lack of support, and termination under the supervision of Defendants Dee and Mullinary.

37. Dr. Muhammad filed an EEOC charge alleging similar discriminatory treatment by Defendants Dee and Mullinary.

38. Defendants Dee and Mullinary directed Plaintiff to terminate Dr. Muhammad's employment and sought to assign Plaintiff responsibility for the termination because Plaintiff is a Black woman.

39. Plaintiff declined to terminate Dr. Muhammad, explaining that she had not been in her role long enough to fairly assess the situation.

40. After Plaintiff refused to terminate Dr. Muhammad, Defendants' hostility toward Plaintiff intensified.

41. Defendants began criticizing Plaintiff and subjecting her to false and unfounded allegations of misconduct, undermining her professional reputation.

42. Defendants demonstrated discomfort with Plaintiff's presence in a leadership role, which appeared to be motivated by Plaintiff's race and gender.

43. Prior to beginning her employment, Plaintiff informed Defendants of pre scheduled work related travel to Singapore. Defendants approved the travel.

44. While in Singapore, Plaintiff participated in work related video conferences and phone calls, informed Defendants of her location, and provided an estimated return date.

45. Upon Plaintiff's return, the hostile work environment escalated, and Plaintiff experienced increased hostility and exclusion.

46. During this period, other employees informed Plaintiff that they intended to report Defendants Dee and Mullinary for discriminatory treatment of employees of color.

47. Plaintiff continued to be singled out and excluded, and it became evident that Defendants were attempting to remove Plaintiff from her role because of her race.

48. On or around June 14, 2024, Defendants terminated Plaintiff's employment.

49. Defendants claimed that Plaintiff's termination was based on her prior contractual obligation, despite having approved that arrangement prior to Plaintiff's hire.

50. Defendants' stated reason for Plaintiff's termination was false and pretextual.

51. Defendants' actions were intentional, willful, and undertaken with reckless disregard for Plaintiff's federally protected rights.

52. As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff suffered economic loss, emotional distress, humiliation, and other non economic damages.

53. Defendants' conduct reflects a broader pattern and practice of discrimination against African American employees in leadership roles.

## COUNT I
## FOR DISCRIMINATION UNDER TITLE VII

7. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

8. Title VII, 42 U.S.C. § 2000e-2, makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because of the employee's race.

9. Plaintiff is an African American woman and is a member of a protected class under Title VII.

10. Defendants engaged in unlawful employment practices by discriminating against Plaintiff because of her race, including but not limited to: failing to properly onboard her, excluding her from meetings, denying her support and resources provided to non African American employees, questioning her qualifications, subjecting her to racially charged and stereotypical remarks, undermining her authority, and treating her role as an "experiment."

11. Plaintiff was subjected to adverse employment actions due to her race, including disparate treatment, heightened scrutiny, exclusion, hostile working conditions, and termination.

12. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered loss of income, loss of benefits, damage to her career, emotional distress, humiliation, and other compensable injuries.

## COUNT II
## HOSTILE WORK ENVIRONMENT UNDER TITLE VII

13. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

14. Title VII prohibits discrimination in the form of a hostile work environment based on race.

15. Plaintiff was subjected to unwelcome conduct based on her race, including repeated disparaging remarks, stereotyping, exclusion, hostility, and undermining of her professional role.

16. Defendants' conduct was severe and pervasive and altered the terms and conditions of Plaintiff's employment by creating an intimidating, hostile, and abusive working environment.

17. Defendants knew or should have known of the hostile work environment and failed to take prompt and appropriate corrective action.

18. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered emotional distress, humiliation, and other compensable damages.

## COUNT III
## RETALIATION UNDER TITLE VII

19. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

20. Title VII, 42 U.S.C. § 2000e-3(a), prohibits employers from retaliating against employees who oppose or complain about discriminatory practices.

21. Plaintiff engaged in protected activity by opposing race discrimination, refusing to participate in discriminatory conduct, and raising concerns regarding disparate and unlawful treatment of African American employees.

22. After Plaintiff engaged in protected activity, Defendants retaliated against her by increasing hostility, subjecting her to false and unfounded criticisms, isolating her from her role, escalating scrutiny, and ultimately terminating her employment.

23. Defendants' retaliatory actions constitute unlawful retaliation under Title VII.

24. As a direct and proximate result of Defendants' retaliation, Plaintiff suffered economic harm, emotional pain, humiliation, and other damages.

## COUNT IV
## DISCRIMINATION AND RETALIATION UNDER
## THE PENNSYLVANIA HUMAN RELATIONS ACT

25. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

26. The Pennsylvania Human Relations Act, 43 P.S. § 955(a) and (d), prohibits discrimination and retaliation in employment on the basis of race.

27. Plaintiff is a member of a protected class under the PHRA and engaged in protected activity by opposing discriminatory practices.

28. Defendants discriminated and retaliated against Plaintiff by subjecting her to disparate treatment, hostile working conditions, false accusations, and termination.

29. Defendants JENNIFER DEE and ALICE MULLINARY aided, abetted, incited, compelled, or coerced the discriminatory and retaliatory conduct in violation of the PHRA.

30. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered emotional distress, economic loss, and other compensable damages.

## COUNT V
## WRONGFUL TERMINATION AND PRETEXTUAL DISCHARGE

31. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

32. Defendants terminated Plaintiff's employment under the pretext that her previously disclosed contractual obligation justified termination.

33. Defendants were aware of and approved Plaintiff's contractual obligation prior to her hire and relied on it only after Plaintiff experienced discrimination and engaged in protected activity.

34. Defendants' stated reason for Plaintiff's termination was false, discriminatory, and retaliatory.

35. As a direct and proximate result of Defendants' wrongful termination, Plaintiff suffered loss of income, loss of benefits, emotional distress, and other damages.

## COUNT VI
## RACE DISCRIMINATION AND RETALIATION UNDER 42 U.S.C. § 1981

36. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

37. Section 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens, including the right to the enjoyment of all benefits, privileges, terms, and conditions of the contractual employment relationship.

38. Plaintiff is an African American woman and is a member of a protected class under Section 1981.

39. Defendants intentionally discriminated against Plaintiff on the basis of race by interfering with the terms and conditions of her employment, including but not limited to subjecting her to hostile and discriminatory treatment, undermining her authority, excluding her from meetings, questioning her qualifications, making racially charged and stereotypical remarks, and terminating her employment.

40. Plaintiff also engaged in protected activity by opposing race discrimination and refusing to participate in racially discriminatory conduct.

41. Defendants retaliated against Plaintiff for engaging in protected activity by escalating hostility, subjecting her to false accusations, and terminating her employment.

42. Defendants' actions were intentional, willful, and undertaken with discriminatory animus.

43. As a direct and proximate result of Defendants' violations of Section 1981, Plaintiff suffered loss of income, loss of benefits, emotional distress, humiliation, and other compensable damages.

**JURY DEMAND**

Plaintiff requests a jury trial on all issued to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

DATED: December 26, 2025

**FREUNDLICH & LITTMAN, LLC**

*/s/ Samuel C. Wilson*
Samuel C. Wilson, Esquire
1425 Walnut Street
Suite 200 (2nd Floor)
Philadelphia, PA 19102
215-545-8500
Sam@FandLLaw.com
*Counsel for Plaintiff*